UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL HORACEK,

            Plaintiff,

      v.

LORI SEAMAN, LT. ATKINS, CAPT.
HENRY WALLACE, SHERIFF MICHAEL
BOUCHARD, JANE DOE/JOHN DOE,
Oakland County Jail Librarians, and JANE
DOE/JOHN DOE, Oakland County Jail
Deputy(s),

            Defendants.

_____/

CASE NO. 2:08-CV-10866
JUDGE MARIANNE O. BATTANI
MAGISTRATE JUDGE PAUL KOMIVES

### REPORT AND RECOMMENDATION ON (1) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #17); and (2) PLAINTIFF'S MOTION FOR LEAVE TO AMEND (docket #26)

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
        A.      Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
        B.      Defendants' Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
                1.      Legal Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
                2.      Claims Against Defendants Bouchard, Atkins, and Wallace . . . . . . . . . . . . . . . . . .  5
                3.      Access to Courts Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
                4.      Telephone Monitoring Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
                5.      Legal Mail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
        C.      Plaintiff's Motion for Leave to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
                1.      Legal Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
                2.      Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
        D.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*       *       *       *       *

I.      RECOMMENDATION: The Court should grant in part and deny in part defendant's motion

for summary judgment, and should grant in part and deny in part plaintiff's motion for leave to

amend.  Specifically, the Court should conclude that: (1) defendants Atkins, Wallace, and Bouchard

are entitled to summary judgment with respect to all of plaintiff's claims against them because

plaintiff has failed to show their personal involvement; (2) defendant Seaman is entitled to summary judgment with respect to plaintiff's legal mail claims because plaintiff has failed to show her personal involvement in the opening of his legal mail; (3) all defendants are entitled to summary judgment with respect to plaintiff's access to courts and telephone monitoring claims because plaintiff has failed to demonstrate a genuine issue of material fact with respect to the merits of these claims; (4) the remaining John/Jane Doe defendants (and, by extension, the newly proposed named defendants) are not entitled to summary judgment on plaintiff's legal mail claims; (5) leave to amend would be futile with respect to plaintiff's access to courts and telephone monitoring claims; (6) leave to amend would be futile with respect to plaintiff's time-barred legal mail claims relating to mail opened outside his presence prior to January 21, 2006; and (7) leave to amend would not be futile with respect to plaintiff's proposed legal mail claims against the newly-named defendants related to mail opened outside his presence after January 21, 2006.

II.    REPORT:

A.    *Procedural Background*

Plaintiff Daniel Horacek was a pretrial detainee in the Oakland County Jail from June 24, 2005, through July 5, 2006. Plaintiff commenced this action on March 3, 2008, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Defendants are Lori Seaman, identified by plaintiff as the Oakland County Jail Mailroom Supervisor; Oakland County Sheriff's Office Lieutenant Atkins; Captain Henry Wallace; Oakland County Sheriff Michael Bouchard; and various Jane and John Doe defendants working in the law library or mailroom. Plaintiff's complaint alleges that defendants violated his First, Sixth, and Fourteenth Amendment rights by: (1) opening and inspecting his legal mail outside his presence; (2) providing him inadequate legal materials; and (3)

2

monitoring his telephone conversations with his attorney.

The matter is currently before the Court on two motions filed by the parties. On September 10, 2008, defendants filed a motion for summary judgment. Defendants argue that they either had no involvement in the alleged deprivations of plaintiff's rights or did not, in fact, deprive him of any constitutional rights. Plaintiff filed a response to the motion on January 26, 2009, and defendants filed a reply on January 29, 2009. Second, on January 21, 2009, plaintiff filed a motion for leave to amend the complaint. Plaintiff's proposed amended complaint does not seek to add any new claims and is nearly identical to his initial complaint. It differs only in its addition of new defendants (previously identified as Jane/John Doe defendants) and in its tying certain allegations to specific defendants who were identified in the initial complaint as unknown. For the reasons that follow, the Court should grant in part and deny in part defendants' motion for summary judgment, and should grant in part and deny in part plaintiff's motion for leave to amend.[1]

B.      *Defendants' Motion for Summary Judgment*

1.      *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact

---

[1]Although I have authority to issue an order disposing of plaintiff's motion to amend under 28 U.S.C. § 636(b)(1)(A), because a resolution of that motion is intertwined with the Court's resolution of defendants' motion for summary judgment, I respectfully submit this Recommendation on the motion for leave to amend rather than disposing of the motion myself.

3

is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, Fed. R. Civ. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-

moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

       2.    *Claims Against Defendants Bouchard, Atkins, and Wallace*

The Court should first conclude that defendants Bouchard, Atkins, and Wallace are entitled to summary judgment because plaintiff has failed to allege or show that they were personally involved in the alleged deprivation of plaintiff's constitutional rights. With respect to defendants Bouchard, Atkins, and Wallace, plaintiff does not allege that any of these defendants personally opened his legal mail, denied him legal research materials, or monitored his phone calls. Rather, in both his initial complaint and his proposed amended complaint, plaintiff alleges only that these defendants failed to correct the alleged constitutional violations when they were informed of the violations by plaintiff. *See* Compl., ¶¶ 17-18, 23-25, 30; Proposed Amend. Compl., ¶¶ 20-21, 26-28, 33-34.

The Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth

Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976).  Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983."  *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).  Because plaintiff's allegations against defendants Bouchard, Atkins, and Wallace are limited to their failure to correct the alleged unconstitutional conduct, petitioner has failed to establish their personal involvement in the alleged deprivations of his rights.

Attempting to overcome this conclusion, petitioner relies on *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985).  In that case, a pre-trial detainee was twice beaten by Wayne County Sheriff's deputies following his arrest.  Despite the seriousness of constitutional violations and a state court order requiring the Sheriff to investigate, the Sheriff failed to conduct any investigation of the

incident. From these facts, the Sixth Circuit held that the jury could conclude that the Sheriff was personally involved in the incident. *See id.* at 188. However, the Sixth Circuit has, since *Marchese*, repeatedly held that, as a general matter, mere failure to investigate is insufficient to establish personal involvement. The court has characterized *Marchese* as holding that a failure to investigate, standing alone, is sufficient to infer personal involvement only where the supervisory official had information pointing to "a 'strong' indication of unconstitutional conduct." *Loy v. Sexton*, 132 Fed. Appx. 624, 627 (6th Cir. 2005); *see also*, *Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002) (supervisors not liable because they possessed no information indicating "a strong likelihood" of unconstitutional conduct by their subordinates). Thus, "[a]lthough a sheriff's failure to conduct an investigation . . . may permit an *inference* that the sheriff has an official policy or custom of tolerating unconstitutional conduct, standing alone, it is not enough to establish liability." *Hysell v. Thorp*, No. 2:06-cv-170, 2009 WL 262426, at *22 (S.D. Ohio Feb. 2, 2009) (distinguishing *Marchese*). Thus, as the Sixth Circuit has explained, for supervisory liability to attach it is not enough to show simply that there was a failure to investigate in plaintiff's particular case; rather, plaintiff must also show that the inadequate investigation was "representative of (1) a clear and consistent pattern of illegal activity, (2) which the [supervisor] knew or should have known about, (3) yet remained deliberately indifferent about." *Thomas v. City of Chattanooga*, 398 F.3d 4263, 432-33 (6th Cir. 2005). Unlike *Marchese*, petitioner's claims do not involve the type of blatantly unconstitutional conduct at issue in that case, but the type of run-of-the-mill prisoner complaints typical of incarceration. Further, "[p]laintiff has presented no evidence that [the supervisory officials' failure to investigate] was indicative of a clear and persistent pattern of illegal activity which the Sheriff knew or should have known about." *Hysell*, 2009 WL 262426, at *22. Plaintiff

7

thus has failed to establish sufficient facts to impose liability on the supervisory defendants. *See also*, *Mierthew v. Amore*, No. 07-15277, 2009 WL 1383285, at *5-*6 (E.D. Mich. May 15, 2009) (Edmunds, J.); *McGuire v. Warner*, No. 05-40185, 2009 WL 1210975, at *8-*9 (E.D. Mich. Apr. 28, 2009) (Cox, J.).   Accordingly, the Court should grant summary judgment to defendants Bouchard, Atkins, and Wallace.

3.      *Access to Courts Claim*

In both his initial complaint and proposed amended complaint, plaintiff alleges that he was denied his right to access the courts because the Oakland County Jail law library is inadequate and he was denied access to federal legal materials that he had requested.   The Court should conclude that defendants are entitled to summary judgment on this claim.

Construed liberally, plaintiff's complaint also raises claims that he was denied his right of access to the courts by defendants' failure to timely provide an account statement, and failure to provide reading or writing assistance.   Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).   "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV. *See Chambers v. Baltimore and Ohio R.R.*, 207 U.S. 142, 148 (1907).   A prisoner's access to the courts must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984); *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983)*.*   A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury. *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (1996).   To meet this requirement, a plaintiff must show that the actions of the prison officials

8

"hindered the prisoner's efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399,

1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir.

1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific

instance in which he was actually denied access to the courts.") (internal quotation omitted).

Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*,

518 U.S. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to

transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners'

ability "to attack their sentences, either directly or collaterally, and in order to challenge the

conditions of their confinement." *Id.* at 355. Under *Lewis,* dismissal is appropriate where a prisoner

fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *See*

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

> As the Supreme Court has explained, to establish an access to courts claim,
>
> the named plaintiff must identify a nonfrivolous, arguable, underlying claim . . . . It
> follows that the underlying cause of action, whether anticipated or lost, is an element
> that must be described in the complaint, just as much as allegations much describe
> the official acts frustrating the litigation. It follows, too, that when the access claim
> (like this one) looks backward, the complaint must identify a remedy that may be
> awarded as recompense but not otherwise available in some suit that may yet be
> brought. There is, after all, no point in spending time and money to establish the
> facts constituting denial of access when a plaintiff would end up just as well off after
> litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, plaintiff has failed to show that he suffered any litigation-related harm from the

allegedly inadequate access to legal materials. Plaintiff alleges two litigation related harms from

the alleged denial of access to legal materials. First, he contends that his federal habeas corpus

petition was delayed for over one year. That petition was filed on November 19, 2004, while

petitioner was incarcerated at the Parnall Correctional Facility, and challenged his 1999 state court conviction for breaking and entering. *See Horacek v. White*, No. 04-74293 (E.D. Mich.), docket #3.[2] The petition was dismissed on the merits by Judge Hood on November 5, 2007. *See id.*, docket #46. Plaintiff does not allege that the action was dismissed because he did not have adequate legal research to support his claims; rather, he alleges only that the inadequate legal materials delayed his habeas case for over one year. *See* Compl., ¶ 32; Proposed Amended Compl., ¶ 35. Such allegations fail to state a viable access to courts claim, as "[s]tanding alone, delay and inconvenience do not rise to the level of a constitutional deficiency." *Griffin v. DeTella*, 21 F. Supp. 2d 843, 847 (N.D. Ill. 1998); *see also*, *Winburn v. Howe*, 43 Fed. Appx. 731, 733 (6th Cir. 2002); *Purkey v. Green*, 28 Fed. Appx. 736, 742 (10th Cir. 2001).

Plaintiff also contends that he was frustrated in his ability to pursue a federal civil rights action. On August 27, 2003, plaintiff, along with two other inmates, filed a *pro se* civil rights action raising a number of claims relating to his incarceration at the Parnall Correctional Facility. *See Horacek v. McLain*, No. 03-73206 (E.D. Mich.), docket #6. On March 31, 2005, Judge Hood entered an Order granting in part and denying in part the defendants' motions to dismiss and for summary judgment. Specifically, Judge Hood concluded that plaintiff had failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) with respect to the claims asserted in paragraphs 1-9, 13-18, and 20-34 of the complaint, as well with respect to portions of paragraphs

---

[2]Pursuant to Fed. R. Evid. 201 (court may take judicial notice of any fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."), the Court may take judicial notice of its own records. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (court may take judicial notice of court order for purpose of recognizing "judicial act" which the order represents); *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it."); *Isaac v. Jones*, 529 F. Supp. 175, 179 n.2 (N.D. Ill. 1981).

11, 12, and 19. *See id*., docket #152, at 9-27. With respect to paragraph 10 and other portions of paragraphs 11, 12, and 19, the Court concluded that the claims were exhausted and that summary judgment was not appropriate on the merits. *See id*. at 17-19, 34-37. On June 30, 2005, Judge Hood granted the defendants' motion for reconsideration and dismissed plaintiff's remaining claims based on the then newly-announced "total exhaustion" rule of *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). Six days earlier, plaintiff had become a detainee at the Oakland County Jail.

On December 1, 2005, plaintiff filed a supplemental brief seeking reconsideration, claiming that the total exhaustion rule was inapplicable. *See Horacek v. McLain*, No. 03-73206 (E.D. Mich.), docket #160. Judge Hood denied the motion on March 28, 2006. *See id*., docket #163. On February 14, 2007, after plaintiff was no longer incarcerated at the Oakland County Jail, plaintiff's co-plaintiffs filed a motion to vacate the judgment based on the Supreme Court's overruling of the total exhaustion rule in *Jones v. Bock*, 549 U.S. 199 (2007), decided on January 22, 2007. *See Horacek v. McLain*, No. 03-73206 (E.D. Mich.), docket #165. Plaintiff filed his own motion to vacate on the same basis on April 27, 2007. Plaintiff also sought a new time for appeal under FED. R. APP. P. 4(a)(6), claiming that he had not received notice of the Court's June 30, 2005, Order dismissing the case on the basis of the total exhaustion rule until December 17, 2005, and that at that time he was denied access to federal legal materials in the jail library. *See id*., docket #167. On September 28, 2007, the Judge Hood denied both motions, in separate Orders. With respect to plaintiff's motion, Judge Hood concluded that *Jones v. Bock* was not retroactively applicable to plaintiff's case because his case was not pending on direct review at the time *Jones* was decided, and that in any event this new rule of law did not alone provide extraordinary circumstances justifying relief under Rule 60(b)(6). *See id*., docket #176. Plaintiff filed a motion for reconsideration on October 17, 2007.

11

*See id.*, docket #177. Judge Hood denied that motion on August 29, 2008. Relying on FED. R. CIV.

P. 77(d)(2) and FED. R. APP. P. 4(a)(6), Judge Hood concluded that plaintiff was not entitled to a new

time to appeal because he did not file his motion within 180 days of the Court's March 28, 2006,

Order denying plaintiff's first motion for reconsideration. *See id.*, docket #180.[3]  Judge Hood

explained that plaintiff's motion seeking to reopen the appeal was filed well after the expiration of

the 180-day time limit in Appellate Rule 4(a)(6), and that any lack of notice of the entry of the Order

was caused by plaintiff's failure to inform the Court of his change of address until over a year after

the entry of the Court's March 28, 2006, Order. *See id.*

   Here, plaintiff alleges in both his initial and proposed amended complaints that, but for his

inability to access the federal legal materials he requested while a detainee at the Oakland County

Jail, "there is no doubt but that the Plaintiff would have been successful in reversing the dismissal

in the above case" because he would have been able to file and had pending his appeal when the

Supreme Court decided *Jones*. *See* Compl., ¶ 32; Proposed Amend. Compl., ¶ 35.  However,

plaintiff cannot show that his failure to appeal resulted from his inability to access federal legal

materials. The Court entered its order dismissing plaintiff's case under the total exhaustion rule on

June 30, 2005. Plaintiff's notice of appeal was due 30 days later, by July 30, 2005. *See* FED. R. APP.

---

[3]Rule 77(d) provides the requirements for serving notice of an order or judgment on a party. Paragraph (2) of that rule provides that "[l]ack of notice of the entry does not affect the time for appeal or relieve–or authorize the court to relief–a party for failing to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure (4)(a)." FED. R. CIV. P. 77(d)(2).  Appellate Rule 4(a), in turn, provides that the court may reopen the time to file an appeal if the moving party did not receive notice of the order in accordance with Rule 77(d), and the motion to reopen is filed within the earlier of seven days after the moving party receives notice or 180 days after the judgment or order is entered. *See* FED. R. APP. P. 4(a)(6).

P. 4(a)(1)(A).[4]  However, by plaintiff's own account, he had not yet received either a copy or notice of the Court's June 30, 2005, Order.  Thus, his failure to appeal had nothing to do with any inadequacies of the law library but with his lack of notice of the Court's Order.  And plaintiff's lack of notice had nothing to do with any officials at the Oakland County Jail, but plaintiff's own failure to inform the Court that he was no longer incarcerated in the Parnall Correctional Facility and that his address had changed.  Even if the Court's March 28, 2006, Order, notice of which plaintiff did not receive, opened a new period for appeal, the 180-day window provided by Rule 4(a)(6) would have expired on September 24, 2006.  Plaintiff was released from the Oakland County Jail on July 5, 2006, and at that point he would have still had over 2½ months to file a motion to reopen the appeal window, during which time defendants obviously had no obligation to provide legal assistance or access to legal materials.  Thus, even assuming that the law library was inadequate and that, had a timely appeal been filed it would have still been pending at the time *Jones* was decided,[5] the record in this case and in plaintiff's prior case establish that his failure to file a timely appeal or obtain a reopening of the period for appeal had nothing to do with the alleged inadequacies of the jail law library.  Rather, it was caused by plaintiff's failure to receive copies of this Court's orders, a failure attributable not to defendants or other officials at the Oakland County Jail, but to plaintiff's own failure to inform the Court of his new address.  In these circumstances, plaintiff cannot show

---

[4]Plaintiff's subsequent motions for reconsideration or to vacate did not extend the time for appeal, because the pendency of a Rule 60(b) motion to vacate extends the time for appeal only when it is filed within 10 days of the judgment or order appeal from which is being sought.  *See* FED. R. APP. P. 4(a)(4)(A)(vi).

[5]As noted above, had plaintiff timely appealed the Court's June 30, 2005, Order dismissing his case, his notice of appeal would have been filed by July 30, 2005.  It is questionable to say the least that plaintiff's appeal would not have been disposed of and still would have been pending a year and a half later when the Supreme Court decided *Jones*.

that the actions or omissions of the jail officials hindered his ability to pursue his federal civil rights claims, and thus he cannot establish standing.

Finally, in his proposed amended complaint plaintiff alleges that the lack of federal legal materials resulted in the dismissal of another federal civil rights case.  Again, the record of that case belies plaintiff's claim.  On September 29, 2005, plaintiff filed a *pro se* civil rights action against various employees of the Oakland County jail, alleging denial of kosher meals and interference with his religious worship.  *See Horacek v. Derrick*, No. 05-40302 (E.D. Mich.), docket #1.  Petitioner contends that this case was dismissed "due to a technical violation/omission that would not have occurred had the Plaintiff been allowed access to legal research related to federal litigation." Proposed Amend. Compl., ¶ 35 n.4.  This is not so.  On February 23, 2006, Magistrate Judge Scheer filed a Report recommending that the Court dismiss plaintiff's complaint for failure to exhaust administrative remedies.  *See id.*, docket #23.  Judge Gadola adopted the Report and dismissed the case on July 5, 2006.  *See id.*, docket #32.  Plaintiff's response to the defendants' motion to dismiss did not suffer from a dearth of legal argument or citation to federal case law.  Rather, petitioner raised two arguments which were rejected by the court, namely, that the exhaustion requirement did not apply to pre-trial detainees, and that the Oakland County Jail did not have an administrative grievance procedure.  *See id.*, docket #25.  Judge Gadola simply rejected these arguments.  The latter argument was a factual question which had nothing to do with any federal case law, statute, or rule, and the former argument was simply without merit in light of the law which has been developed under 42 U.S.C. § 1997e(a).  No amount of federal legal research would have changed the fact of whether Oakland County Jail had a grievance procedure or the universal view that § 1997e(a) applies to pre-trial detainees.  *See Edmunds v. Horton*, 113 Fed. Appx. 62, 63 (6th Cir. 2004);

14

*Peoples v. Gilman*, 109 Fed. Appx. 381, 383 (10th Cir. 2004); 42 U.S.C. § 1997e(h) (defining "prisoner" under § 1997e as "any person incarcerated or detained in any facility who is accused of, convicted of, or adjudicated delinquent for, violations of criminal law[.]"). Thus, plaintiff cannot show that any alleged deficiencies in the prison law library hindered his ability to pursue his federal civil rights action.

Accordingly, the Court should conclude that defendants are entitled to summary judgment on plaintiff's access to courts claims.

4.     *Telephone Monitoring Claim*

Plaintiff also alleges that defendants violated his Sixth Amendment rights by monitoring his telephone calls with his attorney. Plaintiff alleges that his telephone conversations with his criminal defense attorney were monitored and recorded and that the information obtained from those conversations was used by the prosecution in the criminal case against him. Specifically, in his affidavit he avers that during one conversation with counsel he discussed the need for counsel to obtain certain evidence and have it examined for fingerprints, but that the evidence was subsequently destroyed by the prosecutor. *See* Pl.'s Br., Ex. E, Aff. of Daniel Horacek, ¶ 5 [hereinafter "Pl.'s Aff."]. Plaintiff also avers that he was never informed that his calls could be monitored or recorded. *See id.*, ¶ 4. Plaintiff contends that this monitoring of his telephone calls with counsel breached the attorney-client privilege and violated his Sixth Amendment right to counsel.

Defendants contend that they are entitled to summary judgment on this claim because "[i]nmates in the Oakland County Jail are fully warned that their telephone calls may be monitored or recorded, both by way of the inmate guide and by way of a recording on the telephone as soon as it is picked up." Def.s' Br., at 11. If true, this fact would render plaintiff's claim meritless. The

15

courts that have considered the issue have uniformly concluded that, when a prisoner speaks with his attorney on a prison telephone with notice to the prisoner of the possibility of monitoring and recording, the prisoner in effect voluntarily discloses the communication to a third-party, thus abrogating the privilege and eliminating any Sixth Amendment concerns. *See United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003); *United States v. Chaiban*, No. 2:06-cr-00091, 2007 WL 437704, at *20-*21 (D. Nev. Feb. 2, 2007); *United States v. Lentz*, 419 F. Supp. 2d 820, 827-28 (E.D. Va. 2005). However, there remains an issue of fact as to whether plaintiff was actually given such notice. Although defendants claim in their brief that a recording on the telephone informs inmates that their calls are being recorded, they have provided no evidentiary support for this assertion. The defendants' affidavits make no such averments, and there is no other evidence (such as a copy or transcript of the recording) which provides evidentiary support for this assertion. Defendants have submitted a document titled "Inmate Telephone Dialing Instructions" which states that "[a]ll calls may be monitored or recorded." Def.s' Br., Ex. 7. Defendants purport that this document is part of the Sheriff's Office Corrective Services Inmate Guide. There is reason to doubt that this is the case, however. Defendants' Exhibit 7 does not purport to be a complete copy of the Inmate Guide, and the telephone instruction sheet is not paginated and is in a different typeface than the rest of the guide. Further, plaintiff has submitted what appears to be a complete copy of the Inmate Guide, which does not include this page. *See* Pl.'s Br., Ex. D. Without some evidence from defendants as to what the document is, there remains an issue of material fact with respect to whether plaintiff was notified that his telephone calls with his attorney were subject to monitoring

and recording.[6]

Nevertheless, even assuming that plaintiff's calls with his attorney were in fact monitored and that he was not notified that they would be monitored or recorded, defendants are entitled to summary judgment on this claim because plaintiff cannot establish a Sixth Amendment violation that is currently cognizable in a § 1983 action. The mere fact that the defendants monitored or recorded plaintiff's conversations with his attorney does not, in itself, establish a Sixth Amendment violation. "Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985); *see also, Dye v. Hofbauer*, 197 Fed. Appx. 378, 383 (6th Cir. 2006) ("The attorney-client privilege is a creation of the common law, and a violation of this privilege generally does not constitute" a constitutional violation.). A Sixth Amendment violation can be established by invasion of the attorney-client relationship only if that invasion causes the defendant to be deprived of his right to counsel or his right to the effective assistance of counsel. To make this showing, the defendant must establish that he was prejudiced in the criminal case against him by the governmental intrusion into the attorney-client relationship. *See Dye*, 197 Fed. Appx. at 383; *United States v. Castor*, 937 F.2d 293, 297 (7th Cir. 1991); *United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir. 1991) (citing *Weatherford v. Bursey*, 429 U.S. 545, 554-57 (1977)).

Thus, to establish a Sixth Amendment violation by defendants' alleged monitoring of his telephone calls to his attorney, plaintiff must show that monitoring prejudiced his defense of the

---

[6]From its form and the fact that the document is headed "DESTRUCTION OF THIS PROPERTY WILL RESULT IN CRIMINAL PROSECUTION," it appears that the document submitted by defendants might actually be a copy of a sign posted at the prisoner telephones. Without some explanation by defendants of what this form is and where it is posted, however, its mere submission to the Court is insufficient to establish that plaintiff was notified that his calls could be monitored.

criminal charges against. And, indeed, plaintiff avers such prejudice in his affidavit. The problem

for plaintiff, however, is that if made this showing of prejudice would show that he was denied the

effective assistance of counsel in his criminal trial, and thus call into question the validity of his

underlying conviction. Where a state prisoner challenges the validity of his or her conviction, a

federal court must be on guard against upsetting the delicate balance between state and federal

judicial power by usurping the role of the state appellate courts. *See Younger v. Harris*, 401 U.S.

37, 43-44 (1971); *Foster v. Kassulke*, 898 F.2d 1144, 1146-47 (6th Cir. 1990). The Court should

also be wary of § 1983 being "used to make an end run around habeas corpus procedures." *Foster*,

898 F.2d at 1148. With these concerns in mind, the Supreme Court has held:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, of for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or
> sentence that has *not* been so invalidated *is not cognizable under § 1983*.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote omitted) (second emphasis added).

This rule limits the intrusion of § 1983 actions into areas properly reserved for habeas review "in

a manner consistent both with the federalism concerns undergirding the explicit exhaustion

requirement of the habeas statute, and with the state of the common law at the time § 1983 was

enacted." *Id.* at 491 (Thomas, J., concurring) (citations omitted). Thus, in analyzing whether a

claim is barred by the *Heck* rule, a court "must consider whether a judgment in favor of the

plaintiff would *necessarily* imply the invalidity of his conviction or sentence." *Id.* at 487

(emphasis added). The *Heck* rule is not dependent upon plaintiff's characterization of his claim,

nor is the applicability of the rule limited to situations in which a plaintiff purports to directly

18

challenge his conviction.  Rather, the *Heck* rule is applicable whenever success on a claim–no matter how characterized by the plaintiff–would necessarily imply that his conviction is invalid. As the Court explained in *Heck*, the rule set down in that case applies where "establishing the basis for the damages claims necessarily demonstrates the invalidity of the conviction," *Heck*, 512 U.S. at 481-82, and extends to claims seeking damages not only for wrongful conviction but also "for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id*. at 486.  Thus, if plaintiff's claims would necessarily imply that his conviction is invalid, his claims are barred by *Heck* notwithstanding the fact that plaintiff did not mention the conviction in his complaint and does not directly challenge that conviction.

Here, as explained above, plaintiff has no Sixth Amendment claim based on the monitoring and recording of his telephone calls to counsel unless he establishes prejudice in his criminal case. And because such prejudice would establish that he was denied his right to counsel or to the effective assistance of counsel, such a showing would necessarily imply the invalidity of his conviction.  Thus, plaintiff's claim relating to the monitoring of his telephone calls is not cognizable in a § 1983 action until that conviction has been overturned on appeal or through a habeas corpus challenge.  Because plaintiff does not allege that this has yet happened, the Court should conclude that defendants are entitled to summary judgment with respect to plaintiff's telephone monitoring claim.

5.    *Legal Mail*

Finally, plaintiff asserts that defendants improperly opened his legal mail outside his presence.  In support of his claim, plaintiff submits copies of 24 envelopes which he claims were opened outside his presence.  These envelopes identify the sender as attorney Lawrence J. Bunting

(four envelopes); the law firm of Sullivan, Ward, Asher & Patton (one); Michigan Attorney General Mike Cox (one); the law firm of Ogne, Alberts & Stuart (two); various Oakland County Circuit Court Judges (two); the American Civil Liberties Union (one); Oakland County Corporation Counsel (one); and the Clerk and various Judges of this Court (twelve). *See* Pl.'s Br., Ex. A. Plaintiff avers that each of these envelopes were delivered to him already opened, and that none were opened in his presence. *See* Pl.'s Aff., ¶ 3.

Here, the four defendants named by plaintiff in his initial complaint are entitled to summary judgment because they had no personal involvement in the opening of his legal mail. As explained above, there are no allegations that defendants Atkins, Wallace, or Bouchard were directly involved in the opening of plaintiff's legal mail, and plaintiff's allegations are insufficient to establish supervisory liability with respect to these defendants. With respect to defendant Seaman, plaintiff does allege that she was the mailroom supervisor. However, in her affidavit defendant Seaman avers that she has "absolutely nothing to do with incoming inmate mail," Def.s' Br., Ex. 1, Aff. of Lori Seaman, ¶ 2, and that she is solely the supervisor of the jail commissary and library, *see id.*, ¶ 1. Plaintiff has presented no evidence to rebut these averments that defendant Seaman's responsibilities did not include the opening and inspection of incoming mail. Thus, defendant Seaman is entitled to summary judgment with respect to plaintiff's legal mail claims.

If the Court rejects my conclusion regarding the named defendants' personal involvement, however, I note that defendants would not otherwise be entitled to summary judgment at this stage of the proceedings. In *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996), the Sixth Circuit noted that "the sanctity of legal mail has long been recognized." *Id.* at 174. The court went on to note:

> Both the Supreme Court and this Circuit have repeatedly held that a prisoner has some First Amendment rights to receive mail, subject to the right of

>prison officials to open a prisoner's incoming mail in accordance with uniformly
>applied policies deemed appropriate to maintain prison security. That case law has
>also acknowledged that the opening of "legal mail" should generally be in the
>inmate's presence in accordance with appropriately drafted and uniformly applied
>regulations.

*Id*. (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). It is equally true, however, that merely

negligent opening of legal mail does not state a § 1983 claim. *See Barker v. Sowders*, No. 98-5506,

1999 WL 427170, at *1 (6th Cir. June 15, 1999); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th

Cir. 1989); *Hinderliter v. Hungerford*, 814 F. Supp. 66, 68 (D. Kan. 1993); *Bryant v. Winston*, 750

F. Supp. 733, 734 (E.D. Va. 1990); *Williams v. McClain*, 708 F. Supp. 1086, 1089 (W.D. Mo.

1989). *See generally*, *Daniels v. Williams*, 474 U.S. 327, 330-33 (1986) (negligence on part of

public officials insufficient to state constitutional civil rights claim); *Davidson v. Cannon*, 474 U.S.

344, 347 (1986) (same).

Here, beyond their personal involvement arguments and some general principles of law

relevant to the legal mail issue, defendants do not suggest that they are entitled to summary

judgment on the underlying merits of plaintiff's legal mail claims. For instances, for purposes of

their motion they do not argue that plaintiff's legal mail was not in fact opened outside his presence,

nor do they argue that any opening of his legal mail was merely negligent. Further, it is clear that

the mail identified by plaintiff as having been opened constitutes "legal mail." Although some

courts have held that because mail from the courts is part of the public record it does not constitute

"legal" mail which prison officials may not read, *see Kennan v. Hall*, 83 F.3d 1083, 1094 (9th Cir.

1996) ("mail from the Courts, as contrasted to mail from a prisoner's lawyer, is not legal mail.");

*Sanders v. Department of Corrections*, 815 F. Supp. 1148, 1149 (N.D. Ill. 1993) (same), the Sixth

Circuit has reached the opposite conclusion. *See Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir.

2003).  Likewise, mail from attorneys identified as such on the outside of the mailing clearly constitutes "legal mail," as is mail from the Michigan Attorney General.  *See Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994).

There is one exception to this conclusion.  First, the letter addressed to plaintiff from the American Civil Liberties Union does not constitute "legal mail."  That envelope did not indicate that it was from an attorney and was not otherwise identified as legal mail, nor has plaintiff alleged that the ACLU was actually representing him as counsel in any proceeding.  In the absence of such indications on the face of the envelope or actual representation of plaintiff, a letter from a public interest group such as the ACLU does not constitute legal mail entitled to heightened protection. *See Jensen v. Kleckler*, 648 F.2d 1179, 1182-83 (8th Cir. 1981); *Samonto v. Maglinti*, No. 05-00598, 2007 WL 1963697, at *6 (D. Hawaii July 3, 2007).

With this one exception, defendants are not entitled to summary judgment on the merits of plaintiff's legal mail claims, although the four defendants named in plaintiff's initial complaint are entitled to summary judgment based on their lack of personal involvement.

C.    *Plaintiff's Motion for Leave to Amend*

Plaintiff seeks leave to amend his complaint.  As noted above, his proposed amended complaint does not add any new claims, and for the most part is identical to his initial complaint. Rather, he seeks to add three additional defendants who he contends were involved in the alleged deprivations of his rights.  For the reasons that follow, the Court should grant in part and deny in part plaintiff's motion for leave to amend.

1.    *Legal Standard*

Ordinarily, leave to amend a complaint or other pleading "shall be freely granted when

22

justice so requires." FED. R. CIV. P. 15(a).  Generally, courts have shown "a strong liberality . . . in allowing amendments under Rule 15(a)." *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865 (4th Cir. 1941).  As the Supreme Court has stated:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Thus, "[w]hen there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is abuse of discretion to deny [the] motion." *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).  In short, courts should construe liberally Rule 15(a) in favor of permitting amendment.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 522 (6th Cir. 1999); *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987).

Nevertheless, as *Foman* makes clear there are certain situations in which it is appropriate to deny leave to amend.  One such circumstance is when amendment would be "futil[e]." *Foman*, 371 U.S. at 182; *see also*, *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003).  Amendment is futile when the proposed amendment is subject to dismissal under Rule 12(b)(6), that is, when the proposed amendment fails to state a claim upon which relief may be granted.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 307 (6th Cir. 2000); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir.

2000).  When, as is the case here, the motion to amend is made in response to a motion for summary judgment, the Court may properly look to the affidavits and other evidence in the record.  In such a case, "[f]aced with the affidavits and documentary evidence filed by the defendants in support of summary judgment, the Court cannot assess the proposed amended complaint as if that evidence does not exist."  *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1414 (S.D. Ind. 1996).  In such a case, the proposed amended complaint is futile under Rule 15(a) not only if it would fail to survive a motion to dismiss for failure to state a claim, but also if the amended pleading could not survive a previously filed motion for summary judgment.  *See Bauchman v. West High Sch.*, 132 F.3d 542, 561-62 (10th Cir. 1997); *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989); *Smith*, 938 F. Supp. at 1414.

2.    *Analysis*

Based on the summary judgment record, the Court should conclude that leave to amend would be futile except with respect to plaintiff's legal mail claims.  For the reasons explained in parts B.3 and B.4, *supra*, defendants are entitled to summary judgment on the merits of plaintiff's access to courts and telephone monitoring claims.  Because the proposed amended complaint does not contain any new material allegations regarding these claims, the proposed new defendants would also be entitled to summary judgment on these claims.  Thus, leave to amend would be futile.

However, amendment of the complaint to add the new defendants would not be futile with respect to plaintiff's legal mail claims.  As explained above, plaintiff's legal mail claims currently survive summary judgment on the merits.  Defendants argue that any claims against these new defendants would be barred by the statute limitations.  This is only partially correct.  For purposes of claims brought under 42 U.S.C. § 1983, state statutes of limitations apply to determine the

24

timeliness of such claims.  *See Wilson v. Garcia*, 471 U.S. 268-69 (1985).  The same is true of state provisions tolling statutes of limitations.  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989).  As the Supreme Court has directed, the federal courts should apply the single most analogous state personal injury statute of limitations to § 1983 claims.  *See Wilson*, 471 U.S. at 276.  The Supreme Court has rejected a claim-by-claim approach to limitations periods under § 1983.  Rather, the Court has interpreted the borrowing principle enacted by Congress "as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims."  *Wilson*, 471 U.S. at 275.  And, the Court continued, the most analogous limitations period for § 1983 claims is the state limitations period governing personal injury actions.  *See id.* at 278-80.  "Thus, federal courts must apply the state statute of limitations for personal injury claims in *all* § 1983 cases."  *Southerland v. Hardaway Mgmt. Co., Inc.*, 41 F.3d 250, 253 (6th Cir. 1994) (emphasis added).  In Michigan, that period is three years.  *See* MICH. COMP. LAWS § 600.5805(10).  *See generally*, *Hardin*, 490 U.S. at 540 ("It is undisputed that the limitations period applicable to this case is three years, as established in Michigan's statute governing personal injury actions.").  Although statutes of limitations and tolling principles are governed by state law, the question of when civil rights claims accrue remains one of federal law.  *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  Generally, a civil rights cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that is the basis of his action.  *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *Sevier*, 742 F.2d at 273.  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Sevier*, 742 F.2d at 273.

Here, defendants argue that the limitations period was not tolled while plaintiff learned the identities of the new defendants.  This may be true.  However, plaintiff's motion for leave to amend and proposed amended complaint were filed on January 21, 2009.  For purposes of the limitations period, this filing of the proposed amended complaint tolls the limitations period.  As the Seventh Circuit has explained: "As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion." *Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993); *see also*, *Bradley v. Armstrong Rubber Co.*, 46 F. Supp. 2d 583, 586 (S.D. Miss. 1999) (citing cases).  Because a three year statute of limitations governs plaintiff's claims, and because the limitations period was tolled on January 21, 2009, by the filing of plaintiff's proposed amended complaint, any legal mail claims accruing after January 21, 2006, are not time-barred.

Plaintiff's legal mail claims accrued when he knew or should have known that his legal mail had been opened outside his presence, that is, when the mail was given to him already having been opened outside his presence.  Although plaintiff does not provide the precise dates that this occurred, a number of the envelopes submitted by plaintiff bear postmark dates after January 21, 2006.  Specifically, all of the mail sent by attorney Lawrence J. Bunting, one of the two letters sent by the law firm Ogne, Alberts & Stuart, the mail sent by Attorney General Mike Cox, and the mail sent by the Oakland County Circuit Court judges all bear postmark dates after January 21, 2006.  The remaining letters bear postmark dates of November 2005, December 2005, or January 12, 2006.  *See* Pl.'s Br., Ex. A.  With respect to any of the legal mail opened outside of plaintiff's presence after

January 21, 2006, which must include any mail postmarked after that date, plaintiff's legal mail claims are not barred by the statute of limitations. These legal mail claims, therefore, are timely, and leave to amend to add new defendants with respect to these claims would not be futile. The remaining legal mail claims which accrued before January 21, 2006, are time-barred, and leave to amend to add these claims would be futile.[7]

D.     *Conclusion*

In view of the foregoing, the Court should grant in part and deny in part defendants' motion for summary judgment. Specifically, the Court should conclude that: (1) defendants Atkins, Wallace, and Bouchard are entitled to summary judgment with respect to all of plaintiff's claims against them because plaintiff has failed to show their personal involvement; (2) defendant Seaman is entitled to summary judgment with respect to plaintiff's legal mail claims because plaintiff has failed to show her personal involvement in the opening of his legal mail; (3) all defendants are entitled to summary judgment with respect to plaintiff's access to courts and telephone monitoring

---

[7]With respect to the legal mail claims that are barred by the statute of limitations because plaintiff had notice of the opening of the mail prior to January 21, 2006, I note that the claims are not saved by the relation-back doctrine of Rule 15(c). Under Rule 15(c), an amendment to a pleading relates back to the filing of the initial pleading for purposes of the statute of limitations where the amendment asserts a claim arising out of the same conduct, transaction or occurrence set out in the original pleading. *See* FED. R. CIV. P. 15(c)(1)(B). Where the proposed amendment changes a party however, the party seeking amendment must also show that the party to be added (a) received notice of the action, and (b) "should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii). Here, plaintiff did not mistakenly identify a proper party; rather, he asserted claims against John and Jane Doe defendants because he did not know the parties' identities. In these circumstances, the courts have uniformly held that Rule 15(c)(1)(C)(ii) is not satisfied. *See Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993); *Sweet v. Wende Correctional Facility*, 514 F. Supp. 2d 411,416-17 (W.D.N.Y. 2007) (amendment seeking to identify John Doe defendants does not relate back because lack of knowledge of identity is not a "mistake concerning the proper party's identity" under Rule 15(c)(1)(C)(ii); *Young-Flynn v. Kelly*, 234 F.R.D. 70, 74 (S.D.N.Y. 2006). Thus, these legal mail claims do not relate back under Rule 15(c) and are barred by the statute of limitations.

claims because plaintiff has failed to demonstrate a genuine issue of material fact with respect to the merits of these claims; and (4) the remaining John/Jane Doe defendants (and, by extension, the newly proposed named defendants) are not entitled to summary judgment on plaintiff's legal mail claims.

The Court should also grant in part and deny in part plaintiff's motion for leave to amend. Specifically, the Court should deny leave to amend as futile with respect to plaintiff's access to courts and telephone monitoring claims, and should deny leave to amend as futile with respect to plaintiff's time-barred legal mail claims relating to mail opened outside his presence prior to January 21, 2006. The Court should grant plaintiff's motion for leave to amend with respect to the legal mail claims against the newly-named defendants which accrued after January 21, 2006.

If the Court accepts these recommendations, the only remaining claims in the case will be plaintiff's legal mail claims against newly added defendants Aaron Alley and Carol Wilkerson which accrued after January 21, 2006.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation*

*of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/20/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on August 20, 2009.

s/Eddrey Butts
Case Manager